UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA G. CAMPBELL,                          Case No. 13-10074

                Plaintiff,                   Paul D. Borman
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge

                Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 19)**

I.   **PROCEDURAL HISTORY**

     A.   Proceedings in this Court

     On January 9, 2013, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Paul D.

Borman referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claims for a period of disability,

disability insurance benefits, and supplemental security income.  (Dkt. 3).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 14, 19).

Plaintiff also filed a reply in support of his motion for summary judgment.  (Dkt.

20).

B.     Administrative Proceedings

Plaintiff filed the instant claims on October 7, 2009, alleging that she became disabled beginning September 24, 2009.  (Dkt. 9-2, Pg ID 46).  The claims were initially denied by the Commissioner on March 26, 2010. (Dkt. 9-2, Pg ID 46).  Plaintiff requested a hearing and on June 14, 2011, plaintiff appeared with counsel via video teleconference before Administrative Law Judge (ALJ) Raymond L. Souza, who considered the case de novo.  In a decision dated June 21, 2011, the ALJ found that plaintiff was not disabled.  (Dkt. 9-2, Pg ID 46-56). Plaintiff requested a review of this decision.  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council, on December 14, 2012, denied plaintiff's request for review. (Dkt. 9-2, Pg ID 32-38); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

_____

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 49 years old on the alleged disability onset date.  Plaintiff has

past relevant work as a seat assembler.  (Dkt. 9-2, Pg ID 54-55).  The ALJ applied

the five-step disability analysis to plaintiff's claim and found at step one that

plaintiff had not engaged in substantial gainful activity since the alleged onset

date.  (Dkt. 9-2, Pg ID 48).  At step two, the ALJ found that through the date last

insured, plaintiff had the following severe impairments: degenerative joint disease

of the right shoulder and right knee, status post myocardial infarction with

stinting, disorders of the spine, and depression.  (Dkt. 9-2, Pg ID 49).  At step

three, the ALJ found no evidence that plaintiff's combination of impairments met

or equaled one of the listings in the regulations.  (Dkt. 9-2, Pg ID 49).  The ALJ

concluded that plaintiff has the following residual functional capacity:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) and 416.967(b) except the claimant
> requires a sit/stand option. The claimant can occasionally
> push or pull with the right upper extremity. The claimant
> can never climb ladders, ropes or scaffolds. The claimant
> can occasionally climb ramps or stairs, stoop, crouch,
> kneel, and crawl. The claimant can occasionally perform

>overhead reaching with the right upper extremity. The claimant should avoid all use of hazardous machinery, and exposure to unprotected heights. The claimant is limited to simple work as defined in the DOT as SVP levels one and two, consisting of routine and repetitive tasks. The claimant requires a low stress job defined as requiring only occasional decision making, with only occasional changes in the work setting, and no strict production quotas (with an emphasis on a per shift, rather than per hour basis).

(Dkt. 9-2, Pg ID 50).

At step four, the ALJ found that plaintiff could not perform her past relevant work.  (Dkt. 9-2, Pg ID 54).  At step five, the ALJ concluded that there were a significant number of jobs in the national economy that plaintiff could perform, given her RFC.  Based on the foregoing, the ALJ concluded that plaintiff was not under a disability from the claimed onset date through the date of the decision. (Dkt. 9-2, Pg ID 55-56).

B.    Plaintiff's Claims of Error

Plaintiff first claims that the ALJ erred by failing to find her left knee impairment to be "severe."  According to plaintiff, this impairment is critical in assessing whether plaintiff could perform light work with a sit stand option, as found by the ALJ.  Plaintiff maintains that the medical evidence of record clearly supports a severity finding in regards to plaintiff's left knee.  In October 2010, Dr. Higginbotham, an orthopedic specialist, noted that plaintiff had arthrosis of the

left knee.  (Tr. 668).  Dr. Higginbotham opined on November 22, 2010 that
plaintiff cannot perform prolonged standing while noting that her symptoms are
pain in the bilateral knees.  (Tr. 676 & 679).  He gave a diagnosis of arthrosis of
the right and left knee.  (Tr. 677).  The ALJ, however, only found that only one of
plaintiff's knees (the right) was a severe impairment and rejected in the process,
plaintiff's severe impairment of her left knee.  Plaintiff acknowledges *Maziarz v.
Sec'y of Health of Hum. Serv.*, 837 F.2d 240, 244 (6th Cir. 1987) in which the
court held that the failure to find additional severe impairments at step two is not
reversible error where the agency considered the non-severe impairments in the
remaining steps of the disability determination process because the ALJ, in this
case, according to plaintiff, did not consider the effects of her left knee
impairments.  Thus, according to plaintiff, the error was not harmless.

Next, plaintiff argues that the ALJ made an improper credibility
determination.  The ALJ found plaintiff not entirely credible and in doing so,
according to plaintiff, mischaracterized the record.  (Tr. 23).  Plaintiff contends
that the ALJ's credibility finding is flawed to the extent it ignores SSR 96-7p and
20 C.F.R. § 404.1529.  The ALJ states that plaintiff is not credible because "the
objective evidence of record weighs heavily against the claimant's allegations in
the case."  (Tr. 23).  However, plaintiff asserts that there is a plethora of objective
evidence that would support limitations on plaintiff's walking and standing.  For

Report and Recommendation
Cross-Motions for Summary Judgment
*Campbell v. Comm'r*; Case No. 13-10074

example, MRI testing of plaintiff's right knee on September 29, 2009 show degenerative changes with an extensive lateral tear of the meniscal ligament and spur formation. (Tr. 293 & 311). Xrays also revealed a moderate spondylosis involving L4-L5 and a vacuum disc phenomenon at the same level. (Tr. 268). MRI testing on the same day showed a moderate to marked spondylosis at L4-L5 with disc bulging and degenerative joint disease. (Tr. 269). EMG testing in April 2008 revealed evidence of lumbosacral radiculopathy with LS nerve root irritation. (Tr. 263). Dr. Lerner has diagnosed on multiple occasions that plaintiff has lumbar myositis with right sciatica, gait disturbance and internal derangement of the right knee. (Tr. 590 & 591).

While the ALJ also states that "the claimant's daily activities which include caring for her grandson, housekeeping, shopping, laundry and meal preparation" indicate that she is capable of work, plaintiff contends that the ALJ mischaracterizes how plaintiff performs all of these activities. In regards to "taking care of her grandson," plaintiff stated that her grandson can do many things himself and as he is a very independent child. Plaintiff testified that she "sometimes" goes shopping. (Tr. 52). As far as plaintiff's housekeeping, she testified that she gets help from her two adult daughters "quite a bit." (Tr. 53). Also, she avoids any housework that would cause her to twist her knees. (Tr. 166). Plaintiff stated she only does laundry if she is having a good day. (Tr. 165).

Plaintiff only cooks "simple stuff" or "quick meals." (Tr. 52). Plaintiff states that when completing any of these tasks, she stops when she has pain and lays down. (Tr. 168). According to plaintiff, the ALJ "conveniently" leaves this description out of his decision in order to portray plaintiff as less impaired than the record reveals.

Plaintiff also takes issue with the ALJ's statement that since plaintiff walked out of the hearing room without "overt pain", this adds to the ALJ's finding of not being credible. (Tr. 23). Plaintiff contends that the ALJ has used the discredited "sit and squirm test," i.e., that the ALJ denied plaintiff's claim for disabling pain based on the ALJ's observation of plaintiff at the administrative hearing. *See Martin v. Secretary of Health and Human Services*, 735 F.2d 1008, 1010 (6th Cir. 1984) ("[W]e cannot allow the dismissal of a claim for pain solely on the ALJ's observations at the hearing. This procedure amounts to the infamous and thoroughly discredited 'sit and squirm' test."). Plaintiff acknowledges, however, that the ALJ is allowed to rely on his personal observations of a witness as an aid to determining credibility and "may distrust a claimant's allegations of disabling symptomology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990). It is appropriate for the ALJ to take into account plaintiff's demeanor at the hearing, as well as her daily activities, in

making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). However, in this case, the ALJ not only mischaracterizes plaintiff's activities including preparing meals for herself, cleaning laundry, grocery shopping, and taking care of a grandson, but undercuts the objective findings. The ALJ must cite some other evidence for denying a claim based on credibility in addition to personal observation. *Id*. Since the ALI inaccurately considered the other evidence in finding that plaintiff was less than credible, plaintiff contends that his credibility determination is not supported by substantial evidence and cannot withstand scrutiny.

Third, plaintiff contends that the ALJ erred by improperly evaluating the assessments of plaintiff's treatment physicians and the state agency. The ALJ states that Dr. Higginbotham's assessments are consistent with a finding of light work with a sit stand option. (Tr. 23). However, Dr. Higginbotham opined that plaintiff cannot perform prolonged standing while noting that her symptoms are that her right knee gives out, intermittent swelling of the right knee, pain in the bilateral knees and knee achiness and stiffness. (Tr. 676 & 679). Dr. Higginbotham also opined that plaintiff's limitations on standing would be at her "discretion." (Tr. 695). Plaintiff contends that, assuming "at her discretion" would be consistent with plaintiff's testimony, she could lift a gallon of milk

(eight pounds) and walk a couple of blocks before she has difficulty.  (Tr. 46 &

50).  Plaintiff also points to RFC form completed by the single-decision maker on

March 2010, which limited plaintiff to lifting five to ten pounds.  (Tr. 514).

Contrary to this assessment, the ALJ found that the claimant could perform light

work with a sit/stand option, which means she is capable of lifting up to 20 lbs.

Plaintiff points out that she suffers from a low back impairment with a x-ray

revealing moderate spondylosis involving L4-5.  (Tr. 261-263).  Further, an MRI

of the low back reflected moderate to marked spondylosis at L4-5 with stenosis.

(Tr. 269).  EMG testing reflected evidence of radiculopathy, primarily in the left

L5 nerve root distribution.  (Tr. 263).  Consequently, plaintiff contends that there

is objective medical evidence to support the proposition that she is limited to

sedentary work (and thus would be found disabled).

Lastly, plaintiff argues that the ALJ failed to sustain his burden of

establishing that there is other work available in the national economy that

plaintiff can perform.  The ALJ determined that plaintiff lacked the residual

functional capacity ("RFC") to perform her past relevant work as a seat assembler.

(Tr. 23-24).  Therefore, the burden of proof shifted to the Commissioner to

establish that there is other work that plaintiff can perform.  *See Harmon v.

Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).  Plaintiff argues that the Commissioner

failed to satisfy this burden.  While the ALJ stated in his decision that he relied on

Report and Recommendation
Cross-Motions for Summary Judgment
*Campbell v. Comm'r*; Case No. 13-10074

the testimony of a vocational expert in finding that plaintiff has the RFC to perform other work, plaintiff argues that the ALJ's hypothetical question to the VE did not accurately portray her impairments because it did not include the specific physical limitations concerning her left knee.  According to plaintiff, the ability to sit and stand  would indeed require the good use of both knees.  The clinical findings and medical opinions indicate that plaintiff suffers from moderate limitations with respect to her bilateral knees and that she has limited range of motion.  Dr. Higginbotham has examined plaintiff on multiple occasions and found swelling, tenderness and instability in the bilateral knees.  He also recommended that plaintiff be restricted from frequent standing, walking, climbing, stooping.  Plaintiff contends that Dr. Higginbotham's findings are consistent in showing that due to her limitations with respect to her knees and back, she could not do light work, regardless if she has a sit/stand option.

Plaintiff also argues that the hypothetical question did not include any limitations resulting from plaintiff's heart impairment, which could impact an individual's ability to perform light work.  Her EKG shows sinus tachycardia.  (Tr. 407).  Additionally, plaintiff had hypoxia after having an abnormal CT Scan of the chest with multiple sub centimeter nodules suggestive of sarcoidosis (Tr. 409-411 & 416) and a tilt table test was positive showing orthostatic hypotension and vasodepressor syndrome.  (Tr. 419-420).  Plaintiff also testified that she has

Report and Recommendation
Cross-Motions for Summary Judgment
*Campbell v. Comm'r*; Case No. 13-10074

shortness of breath and chest discomfort even though she has undergone angioplasty. (Tr. 45). According to plaintiff, these restrictions could impair the ability to perform light work. Plaintiff again points out that the ALJ ignored, without any reasons, the limitations found by the State Agency SDM, who reviewed plaintiff's file report and opined that plaintiff can only lift five to ten pounds. (Tr. 510). In addition, even if one accepted the ALJ's findings, plaintiff argues that the ALJ committed legal error because plaintiff's ability to work does not fall under the category of light work but instead falls under the category of sedentary work. Plaintiff argues that, had the ALJ included any of the limitations found by the State Agency consultant in his hypothetical question, the VE could have testified that there is no light work that plaintiff can perform.

C.   The Commissioner's Motion for Summary Judgment

According to the Commissioner, the ALJ properly evaluated plaintiff's left knee impairment as non-severe. In October 2009, plaintiff visited Dr. Higginbotham for complaints of right knee pain. (Tr. 317). Dr. Higginbotham diagnosed plaintiff with arthritis of the right knee. (Tr. 318). Neither plaintiff nor Dr. Higginbotham referenced plaintiff's left knee during these examinations. Plaintiff returned to Dr. Higginbotham in April 2010, complaining about pain, stiffness, and swelling in her right knee. (Tr. 556). Dr. Higginbotham diagnosed plaintiff with internal derangement of the right knee. (Tr. 556). From September

2009 until July 2010, plaintiff saw Dr. Laran Lerner of Detroit Greater Physical Therapy and Rehabilitation for physical therapy and pain management prescriptions. (Tr. 431-474, 587-648). Plaintiff repeatedly complained of low back pain and pain in the right knee. (Tr. 431, 593, 589). Throughout the medical documents, Dr. Lerner consistently diagnosed plaintiff with right knee internal derangement. (Tr. 644, 434, 597). The records show no indication of plaintiff ever mentioning problems with her left knee. Plaintiff first complained about her left knee in November 2010 during an appointment with Dr. Higginbotham. (Tr. 676). Dr. Higginbotham diagnosed her left knee with mild arthritis. (Tr. 678). However, the Commissioner contends that the mere diagnosis of arthritis says nothing about the severity of the condition. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). The Commissioner also points out that, at the administrative hearing on June 14, 2011, plaintiff testified that the arthritis in her left knee was not as bad as the right knee. (Tr. 54). Thus, the Commissioner contends that plaintiff's mild form of arthritis in her left knee does not significantly impact her ability to work. *Blacha v. Sec'y of HHS.*, 927 F.2d 228, 231 (6th Cir. 1990) ("Mild degenerative arthritis is not expected to produce disabling pain.").

Although plaintiff's left knee was found to be a non-severe impairment, the

Commissioner asserts that the ALJ still carefully considered all of plaintiff's impairments in determining her residual functional capacity (RFC), or the most she could still do despite her impairments. 20 C.F.R. § 404.1545. The Commissioner acknowledges that in the RFC assessment, an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5. The Commissioner argues that the ALJ adequately accounted for plaintiff's knee condition in the RFC by limiting her to light work with a sit/stand option and additional restrictions on climbing and kneeling. (Tr. 19); *see Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987) (When an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two "[does] not constitute reversible error."). Even assuming the Court was to conclude that the ALJ erred in failing to find plaintiff's left knee to be severely impaired, the Commissioner also contends that it constitutes harmless error based on the ALJ's finding that plaintiff suffered from other severe impairments. In other words, "[b]ecause the ALJ found that [Plaintiff] had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 Fed.Appx. 801, 803 (6th Cir. 2003); *see also Boley v. Comm'r of Soc.*

*Sec.*, 2013 WL 1090531 (E.D. Mich. 2013) ("[A]n ALJ does not commit harmful error by excluding an impairment at step two so long as the ALJ finds other severe impairments and then considers the limiting effects of the excluded impairment at steps three through five."). According to the Commissioner, plaintiff failed to show that this error was harmful enough to warrant a remand and thus, the ALJ's finding should not be disturbed.

The Commissioner also maintains that the ALJ properly evaluated plaintiff's credibility and plaintiff's argument, that the ALJ's credibility finding is flawed because he mischaracterized the record, lacks merit. According to the Commissioner, the record contains substantial evidence to support the ALJ's finding. As the ALJ pointed out, plaintiff's treatment history for her impairments has been routine and conservative, consisting of medication, diet and exercise advice, and physical therapy. The Commissioner points out that since February 2008, plaintiff has attended rounds of physical therapy, which indicates she is capable of doing physical activity. (Tr. 260-275, 587-645). By March 2008, she reported that the therapy was "helping her a great deal." (Tr. 264). Plaintiff received physical therapy in 2009 and 2010 from Dr. Laran Lerner who noted plaintiff's obesity and prescribed an appetite suppressant. (Tr. 591). Plaintiff also consulted Dr. Lerner for general ailments such as a sore throat and sinus problems, and requested laryngitis medication. (Tr. 631-633). On her discharge from her

two night stay at St. John Providence Hospital on March 7, 2009, she was advised to follow a cardiac diet of low fat, low salt, and low cholesterol options. (Tr. 278). Since this occurrence, plaintiff has not had any checkups for her heart condition in at least one and a half years. (Tr. 45); *see Strong v. Social Security Admin.*, 88 Fed.Appx. 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain."); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *7 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints").

The Commissioner also points out that minimal evidence supports plaintiff's complaints about shortness of breath. On December 13, 2009, she went to St. John's Hospital claiming shortness of breath. (Tr. 440). A test for pulmonary embolism came back negative. (Tr. 581). Her condition stabilized at the hospital after she was administered her medications. (Tr. 584). It was also noted that plaintiff has a history of noncompliance with medication. (Tr. 408). Plaintiff was prescribed an inhaler that she uses for occasional episodes of shortness of breath. (Tr. 44-45).

The Commissioner also contends that despite her physical and mental limitations, the ALJ properly found that plaintiff's ability to conduct daily living

activities is only mildly restricted. (Tr. 18). At the administrative hearing, plaintiff testified that she could do light housework, cook simple meals, go grocery shopping, and attend to her personal grooming without help. (Tr. 52-53). *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."). Plaintiff's testimony regarding an inability to socialize because of her depression and tiredness is contradictory. (Tr. 55). She regularly visited with family members and attended church every week. (Tr. 38, 51-52). She engaged in Bible study and cared for her five year old grandson. (Tr. 164). Although plaintiff asserted that her grandson is independent, a five year old child would still require considerable assistance. *Id*. Plaintiff currently lives alone and sufficiently manages her personal needs. (Tr. 47, 53). By performing a variety of activities without significant assistance, she does not exhibit signs of marked difficulties or restriction in her daily living.

Plaintiff claims that her limitations prevent her from performing any light work, however, objective evidence casts doubt on her allegation. In August and September 2010, plaintiff worked for five weeks as a seat inspector doing mostly paperwork. (Tr. 40-41). She stated at the hearing that she was unable to do the work required of her past job, but expressed no similar complaint while working as a seat inspector. (Tr. 41). On November 22, 2010, Dr. Higginbotham opined

Report and Recommendation
Cross-Motions for Summary Judgment
*Campbell v. Comm'r*; Case No. 13-10074

that plaintiff was capable of performing a full-time job so long as it allowed her to alternate sitting and standing. (Tr. 679). Additionally, on April 5, 2010, a note completed by Dr. Laran Lerner indicated that plaintiff could return to work without restrictions. (Tr. 597). The RFC addresses the activities that may aggravate plaintiff's impairments by specifically including a sit/stand option, postural limitations, and several other additional restrictions. (Tr. 19). As such, the Commissioner maintains that plaintiff's condition does not preclude her from pursuing employment opportunities.

The Commissioner also argues that the ALJ reasonably relied on his personal observations of plaintiff at the hearing, which further undermined her credibility. An ALJ's credibility findings are given significant weight "particularly since an ALJ is charged with the duty of observing a witness' demeanor and credibility." *Walters*, 127 F.2d at 531; Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *8 ("In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements."). The ALJ wrote that plaintiff appeared comfortable and not in obvious pain while either entering the hearing room or sitting for the duration of the hearing. (Tr. 23); *see Tyra v. Sec'y of HHS*, 896 F.2d 1024, 1030 (6th Cir. 1990) ("Tyra was able to sit throughout the entire

hearing (one hour and twenty minutes), thereby contradicting his testimony that he could only sit for thirty minutes before standing to alleviate his pain."). The ALJ also noted that plaintiff participated in the hearing and answered questions without seeming distracted by painful conditions. (Tr. 23). Accordingly, the Commissioner maintains that the ALJ reasonably found plaintiff not entirely credible.

Lastly, the Commissioner argues that the ALJ properly evaluated the assessments of the physicians and his hypothetical question was not flawed. The ALJ found that plaintiff had the capacity to perform light work with a sit/stand requirement. (Tr. 19). In reaching his finding, the ALJ reasonably gave significant weight to Dr. Higginbotham's assessment of plaintiff and her ability to do work related activities. (Tr. 72, 677-680). Dr. Higginbotham examined plaintiff's knees and was familiar with her impairments. (Tr. 555-558). He wrote that plaintiff could do work activities given an option to sit/stand alternatively at her discretion. He opined that plaintiff required permanent restrictions against activities with prolonged standing, kneeling, stooping, squatting, climbing, and walking. (Tr. 679). Dr. Higginbotham reported that plaintiff's lifting and carrying capacity were not affected by her impairments. (Tr. 694). The Commissioner asserts, therefore, that his opinion is consistent with the evidence in the record of plaintiff's activity level and symptomatology.

The Commissioner also points out that the ALJ limited plaintiff to simple work with low stress based on plaintiff's history of depression.  (Tr. 19-20). Plaintiff has taken antidepressants since 2002.  (Tr. 197).  Dr. Chalakudy V. Ramakrishna performed a clinical assessment of plaintiff and found that she had a GAF of 60, which is indicative of the borderline of mild to moderate difficulty in social, occupational, or school functioning.  (Tr. 21).  Between February and March of 2010, plaintiff attended weekly therapy sessions to help her cope with feelings that her life was not going well.  (Tr. 543).  She returned to therapy in November 2010 with similar laments.  (Tr. 653).  The Commissioner contends that the ALJ fully accommodated plaintiff's mental impairment by requiring a job with routine and repetitive tasks, only occasional decision making, only occasional changes in the workplace, and no strict production quotas. (Tr. 19).

While plaintiff argues that the ALJ ignored the opinion of the state agency reviewer who opined that plaintiff could only do sedentary work, the Commissioner argues that the ALJ reasonably discounted the state agency reviewer's opinion because she was neither a doctor nor a medical consultant.  (Tr. 516).  As such, she gave a non-medical opinion, which an ALJ is not allowed to give controlling weight to.  See Soc. Sec. Rul. 06-03p, 1996 WL 2329939 at *2 ("[O]nly acceptable medical sources' can give us medical opinions…Information from these "other [non-medical] sources" cannot establish the existence of a

medically determinable impairment"). Therefore, the ALJ reasonably did not rely on the opinion of the state agency reviewer in his analysis of plaintiff's impairments.

Plaintiff also argues that the hypothetical question to the VE was inaccurate because it did not include limitations for plaintiff's left knee, heart impairment, or lifting ability. The Commissioner contends that this argument is without merit because complaints not accepted in the RFC determination do not need to be included in the hypothetical question. *Stanley v. Sec'y of HHS*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"); *see also Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."). The Commissioner points out that the ALJ incorporated both Dr. Higginbotham's and Dr. Baddigam's assessments into his hypothetical question to the VE. (Tr. 59).

In determining that plaintiff was not disabled, the Commissioner asserts that the ALJ properly found that a significant number of jobs existed in the national economy that plaintiff could perform. (Tr. 24-25). At the administrative hearing, the ALJ posed a hypothetical question to the VE to assume a person who shared Plaintiff's age, education, work experience, and RFC. (Tr. 58-61). Although the

ALJ found that Plaintiff could not return to her past work, she could perform other jobs in the economy and was thus not disabled. (Tr. 23-24, 59). The VE gave examples of jobs at the national and regional level that this type of individual could perform. (Tr. 59-60). Based on the limitation of light work with a sit/stand requirement, the VE identified 6,000 cashier jobs, 4,000 bench assembly jobs, and 2,000 mail sorter jobs in the regional economy of southeastern Michigan. (Tr. 59-60); *see Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

    D.    <u>Plaintiff's Reply</u>

According to plaintiff, the Commissioner never addresses one of plaintiff important arguments, that the ALJ improperly evaluated the assessments of the treating physician and the state agency doctor. Additionally, plaintiff contends that her treating doctor's assessments are inconsistent with a finding of light work with a sit stand option, which is also ignored by the ALJ. (Tr. 23). Plaintiff asks the Court to reject the Commissioner's argument that since plaintiff received more treatment for her right knee and that since there are more comments in the medical record concerning her right knee, that the left knee impairment is immaterial to her

claim of disability.  According to plaintiff, this ignores the fact that plaintiff clearly has arthrosis of the left knee albeit there are not as many treatment notes or diagnosis when compared to the right knee.  Plaintiff contends that such a finding does not justify finding that the left knee is a nonsevere impairment.  Again, plaintiff asserts that her bilateral knee issues would tremendously impact the residual functional capacity found by the ALJ.  Plaintiff also urges the Court to reject the Commissioner's harmless error analysis because the record does not reflect that the ALJ considered the limitations and restrictions imposed by all of plaintiff's impairments, i.e., both her severe and purportedly nonsevere impairments, in the remaining steps of the sequential analysis.  Simply, the ALJ failed to mention plaintiff's left knee impairment beyond step two.  Thus, it is not apparent from the ALJ's opinion whether he considered plaintiff's left knee impairment in steps three through five.  Plaintiff argues, therefore, that the harmless-error standard does not apply on these facts.

While the Commissioner contends that the ALJ' s finding of non-credibility is appropriate as the treatment history is "routine and conservative", plaintiff says the Commissioner supports this argument with irrelevant medical evidence that has nothing to do with the issues at hand.  Rather, according to plaintiff, there is a plethora of objective evidence that would support plaintiff's functional limitations.

Plaintiff contends that the ALJ provided no accurate analysis as to why

plaintiff is not credible and this issue is not addressed in the Commissioner's brief. According to plaintiff, the ALJ basically finds plaintiff not credible because he finds her impairments are minimal or not severe, yet the ALJ had no basis to discount plaintiff's credibility as the medical evidence is consistent with her testimony. Plaintiff contends that the ALJ's analysis of plaintiff's credibility is not supported by substantial evidence in the record because not only is the analysis cherry picked but it altogether ignores significant diagnosis and findings.

Finally, since the ALJ refused to consider plaintiff's left knee impairment and issues of pain, the hypothetical questions did not incorporate plaintiff's limitations concerning that impairment. Plaintiff also contends that the ALJ's hypothetical question was also deficient because it failed to assume plaintiff has limitations in walking, standing, sitting, bending, and stooping, all of which could impact the ability to work. In light of the evidence of record, it is clear that the ALJ failed to pose a complete hypothetical question to the VE. Therefore, plaintiff maintains that the VE's testimony fails to provide substantial evidence that plaintiff can perform other work.

## III.   DISCUSSION

### A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

Report and Recommendation
Cross-Motions for Summary Judgment
*Campbell v. Comm'r*; Case No. 13-10074

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et

seq.*).   Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.   F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).   While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"   *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusion

1.    Nonsevere impairment

The omission of an impairment from the step two findings does not warrant remand because the ALJ found that plaintiff had other impairments that met the criteria for severity at step two, and thus proceeded to step three in the sequential analysis. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that because the Secretary had found at least one other

"severe" limitation, the severity of Maziarz's cervical condition was irrelevant for the step two analysis). If a claimant has more than one impairment, the ALJ must consider all medically determinable impairments when assessing the RFC, including those that are not severe. 20 C.F.R. § 404.1545(a)(3); *Fisk v. Astrue*, 253 Fed.Appx. 580, 584 (6th Cir. 2007) (noting that once the ALJ determines at least one severe impairment, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"). A step two omission is of "little consequence," provided that the ALJ considered "all impairments, severe and nonsevere," in crafting the RFC. *See Pompa v. Comm'r of Soc. Sec.*, 73 Fed.Appx. 801, 803 (6th Cir. 2003).

Here, plaintiff acknowledges that the step two screening process is essentially a tool used to dispose of groundless claims, based on the medical evidence alone. Plaintiff contends, however, that the ALJ's failure to acknowledge her left knee impairment calls the remainder of the ALJ's evaluation into question. In the view of the undersigned, plaintiff fails to show that her left knee impairment of mild arthrosis was a severe impairment and even if it were a severe impairment, plaintiff does not explain how the left knee impairment was not accommodated in the RFC, with her sit-stand option. Rather, plaintiff makes a conclusory argument that a bilateral knee impairment "tremendously" impacts her RFC and is contrary to the ALJ's findings. While her treating physician makes

mention of her mild left knee arthrosis, there is nothing in the treatment records suggesting that plaintiff's left knee impairment "significantly limits [her] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  For these reasons, plaintiff's step two argument should be rejected.

        2.    Credibility

Plaintiff claims that the ALJ's credibility analysis is flawed and not based on a proper characterization of record evidence.  "It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001), quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972).  As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'"  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted).  Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Rather, when a complaint of pain or other

symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible.  SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1529.  Consistency between the plaintiff's subjective complaints and the record evidence 'tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed.Appx. 852, 863 (6th Cir. 2011).

In the view of the undersigned, the ALJ's finding that the objective record evidence does not support plaintiff's claims of disabling limitations is supported by substantial evidence.   The ALJ considered the medical opinion evidence, which supports her ability to perform light work, her daily activities, her lack of apparent pain at the hearing, and her ability to answer questions in an appropriate manner without being distracted.  Plaintiff disagrees with the ALJ's evaluation of this evidence, but it is the province of the ALJ to make credibility determinations and plaintiff provides no compelling reason to disturb the ALJ's credibility determination.  As discussed below, the ALJ's RFC is entirely consistent with the

medical opinions and in particular, with the opinions of plaintiff's treatment physicians. Plaintiff complains that the ALJ did not take into consideration the full view of what she needed help with to complete her daily activities as she described. However, the ALJ plainly did not find that plaintiff's claims in this regard were entirely credible, in light of a variety of factors that the ALJ discussed in his credibility analysis. In the view of the undersigned, the ALJ did not apply the "sit and squirm" test. Had the ALJ's entire analysis of the credibility of plaintiff's pain complaints been based on her apparent lack of pain at the hearing, plaintiff's argument would have some merit. However, this was but one factor of many that the ALJ considered in his credibility analysis. Given the medical evidence, plaintiff's daily activities, her ability to work as an inspector, there is no compelling reason to disturb the ALJ's credibility findings.

### 3. Medical opinions

Plaintiff complains that the ALJ failed to consider the opinion of the non-medical single decision-maker. Had the ALJ relied on this opinion, it would have been reversible error. *See Hensley v. Comm'r of Soc. Sec.*, 2011 WL 4406359, at *1 (E.D. Mich. 2011) (remand warranted because ALJ erroneously credited an RFC assessment as having been completed by a physician, as opposed to the non-physician single decisionmaker who wrote it); see also, POMS DI § 24510.05 (The Programs Operations Manual System requires that it "be clear to the

appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels.").  Thus, the ALJ correctly determined that he should not and could not rely on the SDM opinion regarding plaintiff's functional limitations.

In the view of the undersigned, the ALJ properly adopted the opinions of plaintiff's treating physicians, whose opinions supported the ALJ's determination that she could perform a limited range of light work with a sit-stand option. Plaintiff contends that her medical conditions and her treating physician opinions support her claim that she could only perform sedentary work, which would direct a finding of disability.  However, Dr. Higginbotham opined that plaintiff could perform work activities that allow her to sit and stand alternatively at her own discretion.  He indicated that she could not perform prolonged standing, kneeling, stooping or squatting.  (Dkt. 9-8, Pg ID 716).  In addition, he opined that she had no lifting restrictions.  (Dkt. 9-8, Pg ID 714).   Plaintiff asserts that sitting and standing "at her discretion" would be consistent with plaintiff's testimony, she could lift a gallon of milk (eight pounds) and walk a couple of blocks before she has difficulty.  (Tr. 46, 50).  Plaintiff does not, however, explain how Dr. Higginbotham's opinion that she had no lifting restriction also means that she can only lift a gallon of milk.  In addition, plaintiff fails to explain how the ALJ's RFC, which includes a sit/stand option, does not accommodate the prohibition

against "prolonged standing." Notably, the ALJ did not simply adopt the opinion of another of plaintiff's treating physicians that she could "return to work without restrictions." (Dkt. 9-2, Pg ID 53). Rather, the ALJ engaged in a well-reasoned and thorough analysis regarding plaintiff's physical and mental limitations. For these reasons, the undersigned concludes that the ALJ's treatment of the medical opinion evidence is supported by substantial evidence.

## 4.    Vocational expert/hypothetical question

Most of plaintiff's argument in this regard is simply a re-hash of her RFC argument regarding her lifting and standing limitations, which need not be addressed again as the ALJ does not have to include any impairments or restrictions that he finds not credible or unsupported by the medical evidence. Plaintiff also argues that the hypothetical question did not include any limitations resulting from plaintiff's heart impairment, which could impact an individual's ability to perform light work. Her EKG shows sinus tachycardia. (Tr. 407). Additionally, plaintiff had hypoxia after having an abnormal CT Scan of the chest with multiple sub centimeter nodules suggestive of sarcoidosis (Tr. 409-411 & 416) and a tilt table test was positive showing orthostatic hypotension and vasodepressor syndrome. (Tr. 419-420). Plaintiff also testified that she has shortness of breath and chest discomfort even though she has undergone angioplasty. (Tr. 45). However, the ALJ adopted the restrictions imposed by

plaintiff's treating physician, who was well-versed in all of her impairments. Moreover, since her hospitalization for heart issue in March 2009, plaintiff has not had any checkups for her heart condition in at least one and a half years. (Tr. 45); *see Strong v. Social Security Admin.*, 88 Fed.Appx. 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain."); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *7 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"). For these reasons, the undersigned finds no errors in the ALJ's reliance on the hypothetical question posed to the vocational expert.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's emotion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 17, 2014          s/Michael Hluchaniuk
                                 Michael Hluchaniuk
                                 United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

     I certify that on <u>February 17, 2014</u> I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Kerry J. Spencer, Adam Sorkin, Marc Boxerman, Vanessa Miree Mays, Commissioner of Social Security</u>.

                                   <u>s/Tammy Hallwood</u>
                                   Case Manager
                                   (810) 341-7887
                                   tammy_hallwood@mied.uscourts.gov